## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM TOY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO.  14-3230** |
| **THE BOEING COMPANY** | : | |

### MEMORANDUM

**KEARNEY, J.**                                                                                      **MAY 13, 2015**

In claiming his employer discharged him based on his age, the former employee must establish, among other facts, that his employer replaced him with someone sufficiently younger to support an inference of an employer's discriminatory animus. Further, an employment action taken after a series of progressive written discipline steps and breach of a "last chance agreement" overcomes unsupported and subjective opinion assertions that the proffered grounds for discharge were a pretext for age discrimination. Absent a showing of genuine issues of material fact in opposition to an employer's motion for summary judgment, we are obliged to enter judgment dismissing the age discrimination case as a matter of law.

Plaintiff William Toy ("Toy") failed to meet his burden of establishing a *prima facie* case of discrimination; he failed to point to any evidence that his former employer, The Boeing Company ("Boeing") replaced him with an employee sufficiently younger to support an inference of discriminatory animus.  Summary judgment is properly granted in Boeing's favor for this reason alone.  Even if Toy established a *prima facie* case, he failed to meet his burden to demonstrate that Boeing's proffered rationale for his termination is a pretext for age discrimination. Boeing terminated Toy after a series of progressive discipline resulting from mistakes and defects in his job performance. When those performance issues resulted in

termination, Toy's union representative negotiated with Boeing, and it agreed, to extend a "last chance agreement" to Toy and reinstated his employment. Boeing terminated Toy only when yet another performance issue occurred after the "last chance agreement." Toy fails to provide evidence from which a factfinder could reasonably infer that Boeing's proffered justification is merely a pretext for discrimination.

## I.  Undisputed Factual Background[1]

The material facts are largely undisputed. Toy began working for Boeing in 1991 as a sheet metal assembler. Boeing's SOF at ¶10. In 1993, he became a welder and, in 1997, Toy transitioned to the position of composite fabricator.[2]  *Id.* at ¶11.

### A.  Toy's workmanship issues in 2010

Beginning in 2010, Toy's supervisors began finding "significant" defects in the workmanship of the parts he had constructed. *Id.* at ¶17. In July 2010, Boeing management implemented an "Employee Corrective Action Memo" ("CAM") for Toy to address the

---

[1] The Court's Policies require that a Statement of Undisputed Material Facts ("SOF") be filed in support of a motion filed pursuant to Fed.R.Civ.P. 56.  Boeing filed its SOF at ECF Doc. No. 23-2 and No. 40 (as corrected). Toy responded to Boeing's SOF and included additional facts he contends create a genuine issue of material fact at ECF Doc. No. 27-2 and No. 33 (as corrected). The party moving for summary judgment must also submit an appendix of exhibits or affidavits. Boeing's Appendix is filed at ECF Doc. Nos. 23-3, 23-4, and 23-5. The responding party may submit additional exhibits.  Toy submitted additional materials to the Appendix at ECF Doc. Nos. 29, 29-1 through 29-7 and Nos. 35, 35-1 through 35-9 (as corrected).  References to the appendices in this opinion shall be referred to as "Appendix" followed by the Bates number, for example, "Appendix 1a."

[2] The role of a composite fabricator is to manufacture parts for the body of aircraft and rotorcraft. Boeing SOF at ¶12. To manufacture the parts, a composite fabricator must follow detailed computer-generated instructions to layer sheets, or "plies," of specialized material on a "tool." *Id.* at ¶13. These plies must be applied at precise angles according to instruction and, after dozens or hundreds of plies are layered on the tool, the tool is baked in an oven, or "autoclave," fusing the layers together. *Id.* at ¶¶14-16. The varied angles of the plies allow them to bond together to create tensile strength. *Id.* at ¶16.

workmanship issue.[3]  *Id.* at ¶18.  The July 2010 CAM resulted in a written warning.  *Id.* at ¶21. Toy signed the July 2010 CAM.[4]  *Id.*

In October 2010, Boeing learned Toy made an improper cut on a ply and applied an unauthorized patch to cover it.  *Id.* at ¶22.  Boeing discovered the defect and placed a "hold tag" on the part and put it in a bag.  *Id.* at ¶23. Toy later removed the part from the bag, removed the unauthorized patch, and threw away the patch.  *Id.*  Toy admitted to this conduct and conceded that it was wrong.  *Id.* This incident resulted in another CAM with Toy receiving a three day suspension pursuant to Boeing's progressive discipline process.  *Id.* at ¶¶24-25.  Toy signed the October CAM.  *Id.* at ¶23.  Toy had no other workmanship problems for a period of ten months after the October 2010 incident.  *Id.* at ¶26.  As a result, the July and October 2010 CAMs were "wiped clean and restarted" according to Boeing policy. *Id.*

There is no evidence in either the July or October 2010 CAMs, or any other evidence cited by Toy, that he complained of any age-based animus with regard to the 2010 disciplinary measures.  Appendix at 164a, 166a, 168a.  In response to Boeing's SOF, Toy denied any defect in his work and, citing only to his own Declaration, asserted that he "always performed the duties of his job in a workmanlike manner and according to the instructions and directions provided." Toy SOF at ¶¶17-19, 21.

---

[3] Boeing's Employee Corrective Action Process Requirements ("ECAPR") provide the process for, *inter alia*, CAMs. Appendix at 34a-70a. There is an internal Boeing policy for the Administration of Employee Corrective Action. Appendix at 24a-32a.

[4] Boeing's CAM form provides an employee's signature "does not necessarily mean that [the employee] concur[s] with or [is] in agreement with" the report; an employee's signature "acknowledges receipt of [the] document only." *See, e.g.* Appendix at 164a.

### B. Toy's workmanship issues in December 2011 – January 2012

There is no evidence in the record of any issues regarding Toy's workmanship from October 2010 to December 2011. On December 5, 2011, after investigation by Boeing's human resources department, Boeing issued a CAM to Toy consisting of a written warning for using the wrong type of potting compound on a part. Boeing SOF at ¶¶28-34. Toy signed the December 5, 2011CAM. *Id.* at ¶28. Later in December 2011, Boeing learned of a defect in another part made by Toy. *Id.* at ¶35. After investigation by Boeing's human resources department, Boeing issued another CAM dated December 19, 2011, this time imposing a one day suspension from work without pay. *Id.* at ¶¶37-40. Toy signed the December 19, 2011 CAM. *Id.* at ¶40.

In early January 2012, Boeing learned of a defect relating to an aircraft skin part manufactured by Toy on December 23, 2011. *Id.* at ¶42. After investigation by Boeing's human resources department, Boeing issued a CAM dated January 26, 2012, suspending Toy from work for three (3) days without pay. *Id.* at ¶¶43-45. During the investigation, Toy spoke with Dorothy Rush of Boeing's human resources department. *Id.* at ¶46. Toy told Rush that he believed that an unclean tool, and not his workmanship, caused the defect.[5]  *Id.* at ¶47. It is undisputed that Toy did not report to Rush that he believed to be the target of discrimination because of his age or that he received disciplined because of age. *Id.* at ¶48.

### C. February 2012 and "Last Chance Agreement"

As of early February 2012, three CAMs within approximately two months were issued to Toy: December 5, 2011 (written warning); December 19, 2011 (one day suspension); and January 26, 2012 (three day suspension without pay).  Appendix at 170a, 202a, 212a; Boeing

---

[5] Toy testified that he believed another employee caused this particular defect, but he did not alert anyone at Boeing of this belief because he did not want the other employee to receive discipline. Boeing SOF at ¶49.

SOF at ¶¶28, 40, 45.  Upon return to work following his three day suspension, Boeing moved Toy to a "less-critical" and "slower-pace[d]" second shift in the "V-22 area" of the Boeing plant. Boeing SOF at ¶52.  Boeing hoped that the move to a "slower pace of work" might assist Toy in "paying attention to his workmanship."  *Id.*

On February 15, 2012, Toy used the wrong tool on a job causing plies to be re-cut and re-worked.  *Id.* at ¶56.  Toy explained to a Boeing manager that he had been given the wrong "kit" by the "lead man."  *Id.* at ¶57.  Under Boeing's "work rules," the responsibility to check instructions and verify use of the correct kit before starting a job remained with Toy.  *Id.* at ¶¶57-58, 62. Boeing issued a CAM on February 29, 2012.  *Id.* at ¶¶60-63.  Under Boeing's progressive discipline process, the February 29, 2012 CAM discharged Toy from Boeing.  *Id.*  Toy refused to sign the February 29, 2012 CAM.  Appendix at 264a.

Toy's union grieved his discharge. Boeing SOF at ¶66.  Rather than going through a "Step 4" grievance proceeding, also called a "Discharge Board of Review" where Boeing management and union leadership together review the basis of an employee's dismissal, the union requested that Boeing provide Toy with a "Reinstatement and Settlement Agreement," commonly referred to as a "Last Chance Agreement."  *Id.* at ¶¶67-68.  Boeing agreed to the union's proposal, and Toy, his union representative, and Boeing all signed the Reinstatement and Settlement Agreement. *Id.* at ¶¶73-81. Boeing reinstated Toy and he returned to work in March 2012. *Id.* at ¶81.

### D.  Toy separates from Boeing

On July 26, 2012, Boeing learned of a defect in a part manufactured by Toy.  *Id.* at ¶84. Boeing's human resource department investigated the incident which included an interview with Toy and his union representative. *Id.* at ¶¶88-94.  Toy denied making the error, explaining that

5

he followed, and built the part, according to the instructions. *Id.* at ¶94. Toy did not have any technical documentation to demonstrate that he built the part accurately. *Id.* at ¶95.[6] Upon its investigation, Boeing concluded that Toy should be discharged for violating the "last chance agreement." *Id.* at ¶¶98-101.

On August 1, 2012, Toy began experiencing chest pains and shortness of breath and left work to seek medical attention. *Id.* at ¶102. Toy sought "occupational leave" which Boeing denied. *Id.* at ¶¶103-104. Toy remained out of work. *Id.* at ¶104.

When it became apparent to Boeing that Toy did not plan on a return to work, it prepared an August 28, 2012 CAM terminating his employment, citing the July 2012 defective part incident. *Id.* at ¶¶105-106; Appendix 346a. Toy's union representative negotiated with Boeing to re-code Toy's termination as a retirement so that Toy could access Boeing's retiree health benefits. *Id.* at ¶108. The union submitted an August 31, 2012 formal resignation letter to Boeing on Toy's behalf. Boeing re-coded Toy's termination as a retirement. *Id.* at ¶¶109-110. Toy began receiving his pension benefits under Boeing's plan in October 2012, and has not sought employment since September 2012. *Id.* at ¶¶111-112. Toy was 64 years old at the time of his separation from Boeing. Appendix at 529a.

## II.  Standard of Review

Toy alleges Boeing terminated him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* ("ADEA") and the Pennsylvania

---

[6]  Toy admitted this point in response to Boeing's SOF at ¶95. Toy added, however, that another employee admitted to making the error that Boeing "sought to ascribe to Mr. Toy," citing to an email from employee Paul Hylenski to Toy's supervisors. Toy's response to Boeing's SOF at ¶95. The email to which Toy cites is dated February 15, 2012. Appendix at 377a. The incident described in SOF at ¶95 occurred in July 2012.

Human Relations Act, 43 Pa.C.S. §951 *et seq.* ("PHRA"). Before us is Boeing's motion for summary judgment.

Under the well-established standard governing summary judgment motions, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Williams v. Wells Fargo Bank,* No. 14-2345, 2015 WL 1573745, at *3 (E.D. Pa. Apr. 9, 2015) (quoting *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

Where the defendant is the moving party, the burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements of its case. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)). The court must consider the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir.2006)). To prevail on a motion for summary judgment, however, "'the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Burton*, 707 F.3d at 425 (quoting *Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (alteration in original)); *see also Anderson*, 477 U.S. at 252.

### III. Analysis

Boeing moves for summary judgment on Toy's age discrimination claims arguing that Toy cannot establish a *prima facie* case of age discrimination under ADEA because there is no evidence that Boeing replaced him with a younger employee and, even if he could make out a *prima facie* case under ADEA, Toy failed to meet his burden of proving that Boeing's legitimate non-discriminatory reasons for its actions were a pretext for discriminatory discharge.[7] We find that Toy failed to meet his burden of establishing a *prima facie* case. This deficiency alone warrants the entry of summary judgment for Boeing. Even if Toy established a *prima facie* case of age discrimination, the undisputed material facts confirm no factfinder could reasonably find that Boeing's legitimate non-discriminatory reason for his termination is a pretext for age discrimination.

### A.  Age discrimination under ADEA and the PHRA[8]

ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, terms, conditions or privileges of employment on the basis of age. 29 U.S.C. §623(a)(1). To establish an ADEA violation, a plaintiff must prove that his age had a "determinative influence on the outcome. To establish a disparate-treatment claim under the

---

[7] In his Complaint ¶¶ 11, 17, and 21, Toy alleges that Boeing created a hostile work environment and discriminated against him "because of his age, including creating a hostile work environment," in violation of ADEA and the PHRA. There is no argument regarding a hostile work environment claim in either party's summary judgment briefing or statement of undisputed facts. Toy did not argue, or even mention, a claim based on a hostile work environment theory in his opposition to Boeing's motion for summary judgment. Accordingly, we find Toy abandoned any claim for recovery under a hostile work environment theory.

[8] We analyze Toy's claims under ADEA and PHRA together. The same legal analysis and standards are applicable to both ADEA and PHRA claims, and courts address such claims collectively. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) (citing *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004)). *See also, Burton v. Teleflex, Inc.*, 707 F.3d 417, 431-32 (3d Cir. 2013) (PHRA claims "should be interpreted coextensively" with ADEA claims).

plain language of the ADEA, therefore, a plaintiff must prove that age was a 'but-for' cause of the employer's adverse decision." *Heffelfinger v. Ecopax, Inc.*, No. 13-2476, 2015 WL 2126993, at \*2 (E.D. Pa. May 7, 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("*Gross*")).

Age discrimination claims under ADEA may be established either by direct or indirect evidence. *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). Boeing asserts that there is no direct evidence of age discrimination and, therefore, Toy's claims must be analyzed under the three-part burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Toy does not contend that there is direct evidence of age discrimination here, and advocates the use of the *McDonnell Douglas* standard in response to Boeing's motion.[9] Our inquiry will be governed by the *McDonnell Douglas* standard. *See Smith v. City of Allentown,* 589 F.3d 684, 690-91 (3d Cir. 2009) (applying *McDonnell Douglas* to ADEA cases after *Gross*).

### B. Toy cannot make out a *prima facie* case of age discrimination

Under the first step of the *McDonnell Douglas* analysis, Toy bears the burden of making out a *prima facie* case of discrimination. *Burton*, 707 F.3d at 426. To establish a *prima facie* case of age discrimination under ADEA, Toy must make a showing that (1) he is forty years of age or older; (2) Boeing took an adverse employment action against him; (3) he was qualified for the position in question; and (4) he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Id.* (citing *Smith*, 589 F.3d at 689).

---

[9] In his response to Boeing's SOF, Toy states that he "does not have any direct evidence" that a Boeing manager issued CAMs to him because of his age. See Response to Boeing's SOF at ¶51.

9

Boeing concedes the first and second elements; Toy is over age forty and suffered an adverse employment action. Boeing does not agree that Toy produced any evidence of his qualification for his position to satisfy the third element; but it concedes this element for purposes of its motion. Boeing takes issue with the fourth element, arguing that Toy failed to point to any evidence that it replaced Toy with a younger employee.

Toy responds in one line: "[t]he Toy Declaration provides sufficient evidence that Mr. Toy was replaced by a younger employee." Upon examination, however, the Toy Declaration simply states:

> "After I was terminated, I was replaced by an employee who was less than 64 years old."

Appendix 529a.

There is no evidence, and Toy does not cite any, to support his bald assertion. As an initial matter, Toy does not allege in his Complaint that Boeing replaced him with anyone sufficiently younger to support an inference of discriminatory animus. *See* Complaint at ECF Doc. No. 1. The record is devoid of evidence that <u>anyone</u> replaced Toy, much less anyone sufficiently younger to support an inference of discriminatory animus. Although he submitted an additional 176 pages of Appendix materials, Toy does not cite evidence to support his assertion. Toy's burden to establish a *prima facie* case at summary judgment requires evidence "sufficient to convince a reasonable factfinder to find all the elements of [the] *prima facie* case." *Burton*, 707 F.3d at 426 (citing *Duffy*, 265 F.3d at 167) (alteration in original) (internal quotation marks omitted)). Toy, as the non-moving party, "will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." *Wolf v. Tico Travel*, 527 F. App'x

135, 138 (3d Cir. 2013) (quoting *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir.

2002)). *See also Williams v. Wells Fargo Bank*, 2015 WL 1573745, at *7 (plaintiff's theory

"reduced to mere speculation" and "insufficient to defeat summary judgment," thus failing to

make out a *prima facie* case of age discrimination claim based on a "replacement" theory);

*Scalamogna v. Steel Valley Ambulance*, No. 13-545, 2015 WL 1038141, *3 (W.D. Pa. Mar. 10,

2015) (the non-moving party must respond to a summary judgment motion "by pointing to

sufficient cognizable evidence to create material issues of fact concerning every element as to

which the non-moving party will bear the burden of proof at trial" and "cannot rely on

unsupported assertions, conclusory allegations, or mere suspicions") (citations and quotations

omitted).

      The Court concludes that no factfinder could reasonably find that Boeing replaced Toy

with any employee, and specifically, with an employee sufficiently younger to support an

inference of discriminatory animus. *See, e,g, Pavlik v. International Excess Agency, Inc.*, 417

F.App'x 163, 167 (3d Cir. 2011); *Novak v. Posten Taxi Inc.*, 386 F.App'x 276, 278 (3d Cir.

2010). Toy failed to satisfy the fourth element of the *prima facie* case. He has not met his initial

burden, and summary judgment is properly granted for Boeing. "If a plaintiff fails to raise a

genuine dispute of material fact as to any of the elements of the *prima facie* case, [he] has not

met [his] initial burden, and summary judgment is properly granted for the defendant." *Burton*,

707 F.3d at 426 (citing *Geraci v. Moody–Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir.1996)).

### C. Toy failed to meet his burden to show pretext

      Even presuming Toy established a *prima facie* case of age discrimination, he failed to

establish that Boeing's proffered justification for his termination is a pretext for age

discrimination and summary judgment in favor of Boeing is warranted on this alternative ground.

Under *McDonnell Douglas*, once plaintiff establishes a *prima facie* case of discrimination, "the burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action." *Burton*, 707 F.3d at 426 (citing *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009)). The burden is "'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Id.* (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir.2006)).

Boeing asserts that there is no evidence of any age-based animus by Toy's supervisors; the four supervisors who made disciplinary and discharge decisions were all over forty years of age; there are no younger similarly situated comparators; and Boeing terminated Toy because of workmanship issues. Toy concedes that Boeing articulated a legitimate non-discriminatory reason for his termination.[10]

Having conceded that Boeing articulated a legitimate non-discriminatory reason for its adverse employment action, the burden of production under the third step of the *McDonnell Douglas* analysis then shifts back to Toy "to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994)). "The plaintiff must make this showing of pretext to defeat a motion for summary judgment." *Id.* (citing *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008)).

To show requisite pretext to defeat Boeing's motion for summary judgment, Toy "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

---

[10] *See* Toy's brief at 7, n.1 (ECF Doc. No. 34).

discriminatory reason was more likely that not a motivating or determinative cause of the employer's action." *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764). "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* (internal quotations and citation omitted).

Toy does not directly address Boeing's proffered reasons for his termination. Instead, he points to evidence essentially unrelated to his age or Boeing's termination of him:

1. <u>Toy's eyesight and fitness for duty</u>: A November 22, 2011 email from a Boeing manager suggested, after Boeing discovered a defect in Toy's work, that Toy may need a fitness for duty examination for his eyes (Appendix 359a) and a January 30, 2012 email from a Boeing manager, prepared while Toy was on a three-day suspension from work, attaching a fitness for duty request (Appendix 369a, 371a-373a);

2. <u>Rumor that Boeing wanted to "get rid of" older employees</u>: Toy contends that "his co-workers" and "younger managers" told him that Boeing wanted to get rid of the older, higher-paid employees and replace them with younger, lower-paid employees "in order to save money;"

3. <u>Boeing's refusal to change his work assignment</u>: Toy contends that his supervisors had the authority to change his work assignment and provide him training, but refused to do so;

4. <u>Faulty investigation leading to Toy's termination</u>: Toy contends that Boeing representative Joseph Arrell, investigating the July 2012 workmanship issue leading to the final August 2012 CAM, performed a "faulty investigation" because Mr. Arrell did not interview "key witnesses" as to whether Toy's work was, in fact, defective.

Against the articulated pretext standards, we consider whether a reasonable factfinder could either discredit Boeing's proffered reasons for Toy's termination or believe that an invidious discriminatory reason is more likely than not a motivating or determinative cause of Boeing's decision to terminate his employment. Based upon the undisputed factual record, we

find Toy failed to carry his burden of production on the issue of pretext under the third step of the *McDonnell Douglas* framework.

Toy's allegation that his co-workers and younger managers told him that Boeing wanted to get rid of "older, higher-paid employees and replace them with younger, lower-paid employees" to save money is not supported by the record. First, there is no allegation or evidence that Boeing replaced Toy with any "younger, lower-paid employees." Second, in response to Boeing's SOF, Toy admitted that he cannot identify a single instance in which any Boeing employee treated him differently based on his age, and that he is not aware of any other employees that should have received discipline for defective work product but did not.[11] Finally, Toy himself could not identify who told him that Boeing wanted to replace older employees with younger employees.[12] It is Toy's burden to present "more than a mere scintilla of evidence;" he must show some evidence "on which the jury could reasonably find for the [non-movant].'" *Burton*, 707 F.3d at 425. Toy failed to meet his burden.

Toy's other evidence on the question of pretext similarly fails to satisfy his burden. There is no evidence that Boeing's request for a fitness for duty exam, including an eye exam, had any connection to Toy's age. Aside from Toy's assertion that a request for an eye exam somehow implies that his supervisors thought Toy's "age has negatively impacted his performance," there is nothing in the record to connect this request to some discriminatory

---

[11] *See* Toy's Answer to Boeing's SOF at ¶¶115, 117 (ECF Doc. No. 33).

[12] Toy testified that he did not know who "started" the rumor that Boeing wanted to replace its older workers with younger workers, "it just went through the building that this is what they heard that Boeing . . . was doing" and that it went by "only word of mouth." Appendix at 111a-112a, 152a. At another point, Toy testified that he "had a couple younger guys" who were his managers and who told him that Boeing wanted to get rid of senior level employees, but Toy did not know the names of his managers. Appendix at 112a.

animus.  Toy points to a November 22, 2011 email from James Wright and a January 30, 2012 email from Charles Roetz to support his assertion.  Toy failed to develop this theory, and does not cite to deposition testimony or other evidence to suggest these emails demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons ... that a reasonable fact-finder could rationally find them unworthy of credence.'" *Fuentes*, 32 F.3d at 764.   Nor do these emails suggest an "invidious discriminatory reason" more likely than not a motivating or determinative cause of Boeing's termination.

Similarly, Toy's assertion that his supervisors refused to provide him with additional training or change his work assignment does not meet Toy's burden to establish pretext.  Toy's citation to the record shows that he was offered additional training, but that he declined.  Appendix at 352a.  Further, the record shows – and Toy admits - that Boeing did, in fact, move Toy to the less-critical, slower paced second shift in the "V-22" area in early 2012 after he came back from his three-day suspension.  Boeing SOF at ¶52.

Finally, Toy's assertion that Boeing's investigator Joseph Arrell performed a "faulty investigation" of Toy's workmanship in July 2012, resulting in the CAM discharging him, does not support pretext. According to Toy, Arrell failed to interview two "key witnesses" to verify whether Toy's work "was in fact defective." The record shows and Toy does not dispute that Arrell interviewed Toy's supervisor, Jeffrey Blaies, regarding the July 2012 workmanship issue, Mr. Blaies explained the discovery and nature of the defect, and, after Arrell prepared a report of the incident, Mr. Blaies read and signed the Boeing investigation statement. *See* Boeing's SOF at ¶¶90-92 and Toy's response admitting ¶¶90-92. Additionally, it is undisputed that Arrell interviewed Toy with his union representative regarding the July 2012 workmanship issue.

Boeing's SOF at ¶93. Even if we accept Toy's assertion that Arrell's investigation is somehow "faulty," there is no evidence surrounding that investigation to demonstrate Boeing's proffered reason for terminating Toy is a pretext for age-based animus.

Toy's subjective belief that the decision to terminate his employment was discriminatory is insufficient. *See, e.g. Ekhato v. Rite Aid Corp.*, 529 F. App'x 152, 156 (3d Cir. 2013) (summary judgment in favor of employer affirmed where plaintiff failed to produce evidence to support an inference that the employer's proffered reasons for termination were pretextual). Toy falls far short of his burden of pointing to evidence from which a factfinder could reasonably either (1) disbelieve Boeing's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely that not a motivating or determinative cause of Boeing's action. Toy does not carry his burden of production on the question of pretext under *McDonnell Douglas*.

## IV.  Conclusion

Toy cannot, as a matter of law, state a *prima facie* claim for age discrimination and cannot establish that Boeing's detailed reasons for discharge, after several progressive disciplinary steps, were a pretext for age discrimination. Toy does not show that Boeing replaced him with any employee, let alone someone sufficiently younger to support an inference of discriminatory animus. The undisputed factual record developed after discovery confirms that Boeing terminated Toy for several failures in workmanship. Summary judgment is granted in favor of Boeing.